UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOE KLUNDER,
                Plaintiff,

v.                                                                                      C.A. No. 10-410 ML

TRUSTEES AND FELLOWS OF THE COLLEGE
OR UNIVERSITY IN THE ENGLISH COLONY OF
RHODE ISLAND AND PROVIDENCE PLANTATIONS, IN
NEW ENGLAND, IN AMERICA, later known as BROWN
UNIVERSITY IN PROVIDENCE IN THE STATE OF RHODE
ISLAND, AND PROVIDENCE PLANTATIONS; RUTH
SIMMONS (in her individual and official capacities);
CARLA HANSEN (in her individual and official capacities);
MARGARET KLAWUNN (in her individual and official capacities);
TERRY ADDISON (in his individual and official capacities);
J. ALLEN WARD (in his individual and official capacities);
RICHARD BOVA (in his individual and official capacities);
ROBERT ENOS (in his individual and official capacities);
PHILIP GRUPPUSO (in his individual and official capacities);
DAVID KERTZER (in his individual and official capacities);
YOLANDA CASTILLO APPOLLONIO, ESQ. (in her individual
and official capacities); JANE DOE, ESQ. (a Brown University
attorney presently unknown to Plaintiff) (in her individual and
official capacities),
                Defendants.

## MEMORANDUM AND ORDER

Plaintiff, Joe Klunder ("Plaintiff") has filed an eleven-count complaint against Brown University ("Brown") and individuals associated with Brown (collectively "Defendants") alleging violations of 42 U.S.C. § 1983 and Rhode Island law. The matter is before the Court on cross-motions for partial summary judgement. For the reasons set forth below, Defendants' motion is granted in part and denied in part. Plaintiff's motion is denied.

1

## I. Standard of Review – Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the pertinent evidence is such that a rational factfinder could resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Id. The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Continental Casualty Co. v. Canadian Universal Insurance Co., 924 F.2d 370 (1st Cir. 1991). The legal standard for summary judgment is not changed when parties file cross motions for summary judgment. Adria International Group, Inc. v. Ferre Development, Inc., 241 F.3d 103 (1st Cir. 2001). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Bienkowski v. Northeastern University, 285 F.3d 138, 140 (1st Cir. 2002) (internal quotation marks and citation omitted). Fed. R. Civ. P. 56 "requires the parties to submit admissible evidence in supporting and opposing motions for summary judgment." Feliciano v. Rhode Island, 160 F.3d 780, 787 (1st Cir. 1998).

## II. Background

Brown was established in February of 1764 by a charter granted by the General Assembly of the English Colony of Rhode Island and Providence Plantations. The charter provides that

2

Brown "corporators shall be a 'body corporate and politic' . . . ." Brown University v. Granger, 19 R.I. 704, 705, 36 A. 720, 720 (1897).[1] The charter was granted in response to a petition put forth by a number of individuals of the Baptist faith who sought to establish a university in Rhode Island. The funds for the establishment and operation of Brown were raised privately. The charter, among other things, granted Brown perpetual succession, provided a means for selecting successors to the original incorporators, and granted Brown the right to sue and be sued and the right to own, receive, and hold property. The charter also provided for internal governance of Brown. The charter has never been amended without the express consent of Brown. Since its creation, Brown has operated as a private institution of higher learning.

Plaintiff enrolled at Brown during the 2003-2004 academic year. Plaintiff contends that, in September 2007, Brown suspended him from classes and removed him from campus. Among other things, Plaintiff alleges that Brown employed a university police officer, Defendant Robert Enos, to enforce its student disciplinary policies and to remove him from campus.[2]

### III. Contentions

Plaintiff alleges Defendants violated § 1983 and Rhode Island law by taking certain

---

[1] The charter refers to Brown as both a "[b]ody [c]orporate and [p]olitic" and a "[b]ody [p]olitic." Defendants' Exhibit A at 2.

[2] In accord with local rules, Defendants filed a separate statement of undisputed facts and a separate statement of disputed facts. See generally DRI LR Cv 56(a). In support of his motion, Plaintiff filed a "statement of undisputed material facts" wherein Plaintiff attempts to "submit[] the facts listed in Paragraphs 66-139 . . . of his complaint as material and undisputed" by incorporating by reference, his affidavit. Plaintiff's Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment at 1. In his affidavit, Plaintiff states that the "facts alleged in [the] complaint in Paragraphs 66 through 139" are "true" as he has "direct, independent knowledge of these facts as they relate to [his] history and experience at Brown University." Affidavit of Joe Klunder in Support of Statement of Facts at ¶¶ 3-5. The Court need not address whether Plaintiff has met the requirements of DRI LR Cv 56(a) because many of the paragraphs of the complaint that Plaintiff attempts to incorporate are conclusory and/or contain hearsay, see Feliciano, 160 F.3d 780 (Fed. R. Civ. P. 56 requires that parties submit admissible evidence), and the overwhelming majority of Plaintiff's alleged "facts" are not material to the disposition of this matter.

actions against him pursuant to Brown's student disciplinary policies. In essence, Plaintiff argues that he was suspended from Brown and removed from campus without being provided with "constitutional safeguards." Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment at 1 ("Plaintiff's Memo"). Plaintiff, among other things, alleges that Defendants violated his rights under the First, Fourth, Sixth and Fourteenth Amendments to the United States Constitution.

The parties cross-move for summary judgment only as to Count I of the complaint. Count I of the complaint seeks a declaratory judgment from this Court finding that Brown and its agents and employees (1) are "persons" within the meaning of 42 U.S.C. § 1983; (2) "are, and have been since February 25[,] 1871,[3] subject to the provisions of the First and Fourteenth Amendments to the United States Constitution[] and Article I of the Rhode Island Constitution, 42 U.S.C. [§] 1983 and other implementing statutes[,]" and (3) "have acted since February 25, 1871, under color of law." Complaint at ¶ 141.

Plaintiff contends that Brown is a "person" acting under color of state law within the meaning of "constitutional guarantees." Plaintiff's Memo at 1. Plaintiff argues that Brown is "imbued with the power to exercise certain governmental authority delegated by the colonial assembly" in a "power sharing arrangement." Plaintiff's Memo at 1. Although Plaintiff concedes that Brown is a "private institution," Plaintiff argues that as a "body politic" Brown was created as the "holder of delegated governmental power and authority." Plaintiff's Objection to

---

[3]The Dictionary Act, passed on February 25, 1871, was "designed to supply rules of construction for all legislation" and provided that the "word 'person' may extend and be applied to bodies politic and corporate. . . ." Inyo County, California v. Paiute-Shoshone Indians of the Bishop Community of the Bishop Colony, 538 U.S. 701, 713 n.1 (2003) (Stevens, J., concurring) (internal quotation marks and citation omitted).

Defendant's [sic] Motion for Partial Summary Judgment at 10 ("Plaintiff's Objection"). As the holder of such governmental power and authority, Plaintiff concludes that Brown is a state actor. Defendants contend that Brown is a private institution not subject to suit under § 1983.

IV. Analysis

42 U.S.C. § 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom, or usage, of any State. . . ." Rockwell v. Cape Cod Hospital, 26 F.3d 254, 256 (1994) (internal quotation marks and citation omitted). In order to state a claim under § 1983, a plaintiff must show (1) the existence of a federal constitutional or statutory right, (2) a deprivation of that right by a "person," (3) acting under color of state law. Id. Private parties and "private institutions meet the state action requirements only in rare circumstances." Rinsky v. Trustees of Boston University, Civil Action No. 10cv10779-NG, 2010 WL 5437289 (D. Mass. Dec. 27, 2010) (internal quotation marks and citation omitted).

This Court recognizes that for purposes of § 1983, the term "person" may be applied to "bodies politic and corporate." Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 688 (1978). "[T]he Supreme Court [has] recognized that there is an understanding going back at least to [1787] . . . that municipal corporations and private [corporations are] simply two species of body politic and corporate, treated alike in terms of their legal status as persons capable of suing and being sued." Eliserio v. Floydada Housing Authority, 455 F. Supp. 2d 648, 654 (S.D. Tex. 2006) (emphasis added) (quoting Cook County, Ill. v. United States ex rel. Chandler, 538 U.S. 119, 126 (2003)). The "phrase [bodies politic and corporate] was used [circa 1871] to mean corporations, both private and public. . . and not to

include the States." Will v. Michigan Department of State Police, 491 U.S. 58, 69 (1989).

The understanding that the term "body politic" is a general term used to describe both private and public corporations is well-reflected in Rhode Island law. See e.g., Doe v. Gelineau, 732 A.2d 43, 45 n.2 (R.I. 1999) (noting that a corporation "subsists as a body politic under a special denomination, which is regarded in law as having a personality and existence distinct from that of its several members"); Masse v. Church of Our Lady of Consolation, 49 R.I. 269, 141 A. 703 (1928) (act creating church corporations stated that such "body corporate . . . shall receive and enjoy its franchises as a body politic"); Mason v. Perry, 22 R.I. 475, 48 A. 671 (1901) (charter of Free Masons Lodge provided that members of the Lodge were created as a body politic and corporate); Wing v. Slater, 19 R.I. 597, 35 A. 302 (1896) (corporation is a body politic).[4] In fact, in Gelineau, the Rhode Island Supreme Court defined the term corporation as:

> An artificial person or legal entity created by or under the authority of the laws of a state. An association of persons created by statute as a legal entity. The law treats the corporation itself as a person which can sue and be sued. The corporation is distinct from the individuals who comprise it (shareholders). The corporation survives the death of its investors, as the shares can usually be transferred. Such entity subsists as a body politic under a special denomination, which is regarded in law as having a personality and existence distinct from that of its several members, and which is, by the same authority, vested with the capacity of continuous succession, irrespective of changes in its membership, either in perpetuity or for a limited term of years, and of acting as a unit or single individual in matters relating to the common purpose of the association, which the scope of powers and authorities conferred upon such bodies by law.

Gelineau, 732 A.2d at 45 n.2 (emphasis added) (internal quotation marks and citation omitted).

Whether a corporate body politic is a private corporation or a governmental entity is

---

[4]"Body politic" is defined as "the collective body of a nation or state as politically organized, or as exercising political functions; also a corporation." Ervin v. State ex rel. Walley, 48 N.E. 249, 251 (Ind. 1897) (emphasis added) (internal quotation marks and citation omitted).

6

determined under the facts and the circumstances particular to the specific corporate entity.

> Notwithstanding that [the Public Law creating the Water Authority] describes the board as a 'body politic,' constitutes it as a 'public benefit corporation,' and declares that in exercising its powers it 'will be performing an essential governmental function,' <u>such language by itself is not effective to clothe the Authority with the distinguishing characteristics of a municipal or quasi-municipal corporation</u>. . . . [T]he Authority is not a true body politic in the nature of a quasi-municipal corporation . . . .

Kennelly v. Kent County Water Authority, 79 R.I. 376, 381, 89 A.2d 188, 191 (1952) (emphasis added); see also O'Connors v. Helfgott, 481 A.2d 388, 393 (R.I. 1984) (statute providing that regional school district "shall be a body politic and corporate" "<u>together</u> with the litany of additional powers and duties" codified at R.I. Gen. Laws § 16-3-11 "[made] it clear that the regional school district was a "general governmental body") (emphasis added).

The Court concludes that the terms "body corporate and politic" and "body politic" are terms of art referring to both private and public corporations. All bodies corporate and politic however, are not governmental entities or arms of the sovereign. The language in Brown's charter identifying it as a "body corporate and politic" and "body politic," standing alone, does not establish that Defendants acted under color of state law. See generally Toledo v. Pu[e]blo De Jemez, 119 F. Supp. 429, 432 (D.N.M. 1954) (statute declaring Pueblo Indian tribes as "bodies politic and corporate" not sufficient, alone, to conclude that community of Pueblo Indians was state actor).

Plaintiff, however, argues that Brown is a state actor because, in addition to being a "body politic," Brown exercises certain governmental functions. See generally Kennelly, 79 R.I. at 380, 89 A.2d at 190 ("true bodies politic" are entities where "corporators exercis[e] a part of the sovereign power of the state"). Plaintiff contends that because Brown's charter defines it as a

7

body politic and grants individuals associated with Brown tax exemptions and because Brown "operate[s] a police department which exercises full police powers," Brown is sharing a "governmental role" with the state, and as such, is acting under color of state law. Plaintiff's Memo at 8. In essence, Plaintiff argues that Brown is considered a state actor as a result of the application of the public function test. See Rinsky, 2010 WL 5437289 at *4 ("there is state action when a private party performs a function that has traditionally been the exclusive prerogative of the state") (internal quotation marks and citation omitted).

Plaintiff argues that because Brown's charter grants certain tax exemptions to individuals associated with Brown, Brown is exercising a governmental function and is therefore a state actor. Receipt "of state financial assistance through tax exemptions" is "insufficient . . . governmental involvement to render the university's disciplinary proceedings 'state action' for section 1983 purposes." Krohn v. Harvard Law School, 552 F.2d 21, 24 (1st Cir. 1977); see also Ganheart v. Xavier University of Louisiana, Civil Action No. 07-9703, 2009 WL 24227 at *7 n.50 (E.D La. Jan. 2, 2009) ("courts have quite consistently found no state action based on various degrees of governmental involvement in universities ranging from federal and state grants, student loan guarantees, [and] tax exemptions").

Plaintiff also argues that Brown is a state actor because it operates a police department which exercises "full police powers." Plaintiff's Memo at 8. Plaintiff posits that Brown is the only non-governmental entity whose agents are defined as "peace officers" by the state of Rhode Island. See R.I. Gen. Laws § 12-7-21. In his papers, Plaintiff also includes an exhibit,[5]

---

[5]Plaintiff includes the exhibit in his objection to Defendants' motion for summary judgment. The exhibit, however, has not been authenticated and thus will not be considered by the Court. See generally Feliciano, 160 F.3d 780 (Fed. R. Civ. P. 56 requires that parties submit admissible evidence).

purportedly from Brown's website, that states that Brown's campus police officers are "licensed as [Rhode Island] [s]pecial [s]tate [p]olice [o]fficers," are required to attend a state certified police academy, carry fire arms and are authorized to enforce state statutes. Plaintiff's Objection, Exhibit 1. Plaintiff concludes that Brown is a state actor because it exercises the state's police powers. Plaintiff, however, cites no convincing authority to support this conclusion.

"In order for a private actor to be deemed to have acted under color of state law, it is not enough to show that the private actor performed a public function. The plaintiff must show that the private [actor] assumed powers traditionally exclusively reserved to the State." Rockwell, 26 F.3d at 258 (internal quotation marks and citation omitted) (emphasis added). "[T]he Supreme Court has explicitly left open the question of whether, and in what context, 'private police forces' may be considered state actors." Wade v. Byles, 83 F.3d 902, 906 n.5 (7th Cir. 1996) (internal quotation marks and citation omitted); Lindsey v. Detroit Entertainment, LLC, 484 F.3d 824 (6th Cir. 2007) (same); Ragesdale v. Macy's Department Store, No. 1:11-cv-33, 2011 WL 573594 (W.D. Mich. Jan. 20, 2011), report and recommendation adopted, 2011 WL 573598 (W.D. Mich. Feb. 15, 2001) (same); Scott v. Marquette University Department of Public Safety, No. 06-C-0384, 2009 WL 2240234 (E.D. Wis. July 27, 2009) (same). Some lower courts that have examined this issue, however, have determined that private police forces may become state actors in certain circumstances. See e.g., Romanski v. Detroit Entertainment, L.L.C., 428 F.3d 629, 638 (6th Cir. 2005) (private security guard was state actor); Payton v. Rush Presbyterian-St. Luke Medical Center, 184 F.3d 623 (7th Cir. 1999) (private police could be state actor); Boyle v. Torres, 756 F. Supp. 2d 983, 995 (N.D. Ill. 2010) (campus police officers employed by private education institution were state actors under § 1983 because the campus police role is "one that

9

has traditionally been the exclusive prerogative of the state"); Scott v. Northwestern University School of Law, No. 98 C 6614, 1999 WL 134059 (N.D. Ill. March 8, 1999) (campus police officers can act under color of state law for purposes of § 1983); but see Wade, 83 F.3d 902 (private security guard not state actor under § 1983); see also Fusco v. Medeiros, 965 F. Supp. 230, 249 (D.R.I. 1996) (in "cases involving . . . private security guards who perform some police functions" courts find state action "when a private actor, upon whom the state confers limited legal authority, actually uses that authority when engaging in the conduct complained of").

In Boyle, an arrestee brought a § 1983 action against private university police officers and municipal police officers. Boyle, 756 F. Supp. 2d 983. The private university police officers contended that because they were not employed by the state they could not act under color of law. Id. at 993. The plaintiff, however, argued that the private university police officers were state actors because the state had delegated to the university police the same powers as those possessed by ordinary municipal police officers. Id. In Boyle, a state statute granted members of the university police force "the powers of municipal peace officers and county sheriffs, including the power to make arrests . . . for violations of state statutes or municipal or county ordinances. . . ." Id. The Boyle court found that

> there can be no question that the [private university's police force's] role is one that has traditionally been the exclusive prerogative of the state: they carry guns, they wear police uniforms, and they patrol their territory in squad cars, they have the ongoing authority to detain citizens and place them in handcuffs; they have the authority to demand that individuals furnish them with ID. When the ensemble of the officers' powers and functions is kept in view, there can be no doubt that they are state actors.

Id. at 995.

In Scott, the plaintiff sued, among others, two members of a private university's police

force under § 1983. Scott, 1999 WL 134059 at *1. According to a state statute, the school's campus police officers had "the powers of municipal peace officers and county sheriffs" provided that those powers were exercised only on university property. Id. The plaintiff argued that the campus police officers were liable under § 1983 pursuant to the public function doctrine. Id. at *3. In its analysis, the Scott court looked to Wade for guidance. Id. In Wade, the Seventh Circuit considered the question of whether a housing authority's private armed security force acted under color of law pursuant to § 1983. Wade, 83 F.3d 902. Wade held that because the private security force "possessed powers no greater than those of armed security guards who are commonly employed by private companies to protect private property" the guards did not act under color of law. Id. at 906. Wade did not involve a "situation where a state had delegated its entire police power to a private force." Id. at 905. The Scott court determined that the university police officers were "far more" than the security guards discussed in Wade and more "akin to . . . [a] police force, delegated the same powers as municipal officers but with a more-limited jurisdiction. By virtue of the [state] statute, the [campus] police force was transformed form mere private security guards." Scott, at *5. The Scott court concluded that the university police force could act under color of law for purposes of § 1983 because the university "police [were] vested with almost identical powers to those of county and municipal police, they exercise functions that are traditionally the exclusive prerogative of the state." Id.

Some of the courts that have considered the question of whether a private police force can act under color of law appear to find that the key inquiry is whether the private police powers are plenary or "merely police-like." See e.g. Durante v. Fairlane Town Center, 201 F. App'x 338, 341 (6th Cir. 2006). If the private defendant's police powers are merely police-like, the private

11

action is "not one considered <u>exclusively</u> reserved to the state." <u>Id.</u> (emphasis in original); <u>see also</u> <u>Romanski</u>, 428 F.3d at 638 (the "plenary arrest power enjoyed by private security police officers licensed pursuant to [a state statute] is a power traditionally reserved to the state alone"); <u>but see</u> <u>Spencer v. Lee</u>, 864 F.2d 1376, 1380 (7th Cir. 1989) ("[a]rrest has never been an exclusively governmental function").

> [A] . . . line has been drawn in the case law. The line divides cases in which a private actor exercises a power traditionally reserved to the state, but not exclusively reserved to it, e.g., the common law shopkeeper's privilege, from cases in which a private actor exercises a power exclusively reserved to the state, e.g., the police power. Where private security guards are endowed by law with plenary police powers such that they are <u>de</u> <u>facto</u> police officers, they may qualify as state actors under the public function test.

<u>Romanski</u>, 428 F.3d at 637.

Because there are material facts in dispute and because the parties have not adequately briefed this issue, the Court does not have sufficient evidence before it to make a determination concerning whether the Brown University police force can act under the color of state law. It is unclear from the record precisely what Defendant Robert Enos' role was in Plaintiff's removal from the Brown campus and the extent of the Brown University police force's overall authority. Therefore, with respect Defendant Robert Enos the motions for summary judgment are denied.

Brown cannot be held liable in a § 1983 suit under a theory of respondeat superior. <u>Ramos v. Patnaude</u>, 640 F.3d 485 (1st Cir. 2011). However, Plaintiff's complaint includes a § 1983 failure to supervise and/or train count against Defendants Brown and Ruth Simmons. <u>See</u> <u>generally</u> <u>Robertson v. Betz</u>, Civil Action No. 09-10449-RGS, 2009 WL 2144371 at *2 (D. Mass. July 16, 2009) (in "certain circumstances, a supervisor and/or a municipal employer may be liable for a failure to train and properly supervise an officer"). Consequently, because this

Court has denied the motion with respect to Defendant Robert Enos, the Court must also deny the motion for summary judgment with respect to Defendants Brown and Ruth Simmons.

In all other respects as to the remaining Defendants, the Court concludes that the record does not reflect a "sufficient [past or] present day relationship between [Brown and that State of Rhode Island] to treat the school as a public institution subject to federal jurisdiction [as a state actor] in a 42 U.S.C. § 1983 suit." Krohn v. Harvard Law School, 552 F.2d 21, 23 (1977).

## V. Conclusion

In summary, Defendants' motion on Count I with respect to Defendants Carla Hansen, Margaret Klawunn, Terry Addison, J. Allen Ward, Richard Bova, Philip Gruppuso, David Kertzer, Yolanda Castillo Appollonio, Esq., and Jane Doe, Esq. is GRANTED because Brown is not a state actor.

Defendants' motion on Count I is DENIED with respect to Defendants Brown, Ruth Simmons and Robert Enos because this Court does not have sufficient information before it to determine whether the Brown University police force has powers and authority that would bring it under the ambit of § 1983.

Plaintiff's motion is denied.

SO ORDERED.

/s/ Mary M. Lisi
Mary M. Lisi
Chief United States District Judge
July 13, 2011.