UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


JOE KLUNDER,

                    Plaintiff,


            v.                                          C.A. No. 10-410 ML

TRUSTEES AND FELLOWS OF THE COLLEGE
OR UNIVERSITY IN THE ENGLISH COLONY OF
RHODE ISLAND AND PROVIDENCE PLANTATIONS, IN
NEW ENGLAND, IN AMERICA, later known as BROWN
UNIVERSITY IN PROVIDENCE IN THE STATE OF RHODE
ISLAND, AND PROVIDENCE PLANTATIONS; RUTH
SIMMONS (in her individual and official capacities);
CARLA HANSEN (in her individual and official capacities);
MARGARET KLAWUNN (in her individual and official capacities);
TERRY ADDISON (in his individual and official capacities);
J. ALLEN WARD (in his individual and official capacities);
RICHARD BOVA (in his individual and official capacities);
ROBERT ENOS (in his individual and official capacities);
PHILIP GRUPPUSO (in his individual and official capacities);
DAVID KERTZER (in his individual and official capacities);
YOLANDA CASTILLO APPOLLONIO, ESQ. (in her individual
and official capacities); JANE DOE, ESQ. (a Brown University
attorney presently unknown to Plaintiff) (in her individual and
official capacities),

                    Defendants.



MEMORANDUM AND ORDER


I.  Procedural Background

       Plaintiff filed an eleven-count complaint against Brown University ("Brown") and

individuals employed by Brown (collectively "Defendants") alleging violations of 42 U.S.C. §

1983 and Rhode Island law.  The parties cross-moved for summary judgment on count 1 of the

complaint in which Plaintiff sought a declaratory judgment that Brown was a state actor pursuant

1

to 42 U.S.C. § 1983.  The Court denied Plaintiff's motion and granted Defendants' motion with

respect to all Defendants except Brown, Ruth Simmons ("Simmons") and Robert Enos

("Enos").[1]  Subsequent to that ruling, Defendants filed a motion to dismiss several counts in the

complaint.  On November 27, 2012, the Court dismissed Plaintiff's false arrest and false

imprisonment claims.  The matter is now before the Court on Defendants' motion for summary

judgment on the remaining counts in the complaint.

## II.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  An issue is "genuine" if the pertinent evidence is such that a rational factfinder could

resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway

the outcome of the litigation under the applicable law."  National Amusements, Inc. v. Town of

Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

The moving party bears the burden of showing the Court that no genuine issue of material

fact exists.  Id.  Once the movant has made the requisite showing, the nonmoving party must

point to specific facts demonstrating a trial worthy issue.  Id.  The Court views all facts and

draws all reasonable inferences in the light most favorable to the nonmoving party.  Continental

Casualty Co. v. Canadian Universal Insurance Co., 924 F.2d 370 (1st Cir. 1991).

To aid the Court in identifying genuine issues of material fact, this District has adopted

Local Rule Cv 56.  "Valid local rules are an important vehicle by which courts operate.  Such

rules carry the force of law . . . and they are binding upon the litigants and upon the court itself . .

---

[1]Enos passed away in early 2011 and the action against Enos was dismissed on February 8, 2012.

. ." Air Line Pilots Association v. Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir.

1994) (citations and footnote omitted).  Local Rule Cv 56 provides that in addition to a

memorandum of law, the moving party "shall" also file a separate statement of undisputed facts.

D.R.I. LR Cv 56(a)(1).   That statement, among other things, must "identify the evidence

establishing [the] fact . . . ."  Id. at (a)(2).  An "objecting party that is contesting the movant's

[s]tatement of [u]ndisputed [f]acts shall file a [s]tatement of [d]isputed [f]acts . . . which shall

identify the evidence establishing the dispute . . . ."  Id. at (a)(3).  "[A]ny fact alleged in the

movant's [s]tatement of [u]ndisputed [f]acts shall be deemed admitted unless expressly denied or

otherwise controverted by a party objecting to the motion."  Id.

    In their motion papers, at times, both parties have failed to comply fully with Local Rule

56.  Parties who ignore Local Rule Cv 56 do so at their own peril.  Gosselin v. Webb, 242 F.3d

412, 415 n.2 (1st Cir. 2001).  In some instances in Defendants' statement of undisputed facts, the

citation to the evidence, purportedly to establish the fact, does not support the fact statement.  See

generally D.R.I. LR Cv 56(a)(2).  Plaintiff attempts to dispute and/or add facts solely through his

memorandum supporting his objection and, at times, he fails to identify the evidence establishing

the alleged dispute.  See D.R.I. LR Cv 56(a)(3); see generally Pope v. Potter, No. 03-544-ML,

2005 WL 3178179, at *2 (D.R.I. November 28, 2005) (under similar prior version of the local

rule, court held that an "attempt to dispute facts by merely incorporating them into a

memorandum opposing a motion for summary judgment does not meet the requirements of the

[local] rule; a separate statement must be filed"); Moore v. Douglas, 09-452-ML, 2010 WL

4323012 (D.R.I. Oct. 5, 2010) (defendants' statement of disputed facts was deficient because it

did not identify the evidence establishing the dispute), report and recommendation adopted, 2010

WL 4455817 (D.R.I. Oct. 29, 2010).  With these procedural deficiencies in mind, the Court turns

to outlining the undisputed facts.

### III.  Factual Background

Plaintiff arrived at Brown as a freshman in the Fall of 2003.  During the Spring of 2005,

Plaintiff's "grades start[ed] to slip."  Defendant's Exhibit B, Plaintiff's  Deposition ("Plaintiff's

Deposition") at 63.  Plaintiff met with Carla Hansen ("Hansen"), the Associate Dean of Student

Life, because he needed approval from an administrator to receive academic extensions.  Plaintiff

also met with Hansen because he was experiencing side effects from medication he had been

prescribed and he had been informed that Hansen was a social worker who had a psychotherapy

practice and "lots of training" dealing with "medical issues."  Id.  At the time, in addition to her

duties at Brown, Hansen was also a licensed social worker.

Plaintiff inquired about the confidentiality of their meeting.  Hansen informed Plaintiff

that Brown's confidentiality "standards were . . . more inclusive than the narrow limits of

psychotherapy . . . and that there were actually a number of things that [Hansen] could be

obligated to address" as a result of the meeting.  Plaintiff's Statement of Disputed Facts at ¶ 8.

During the meeting, Plaintiff asked Hansen, "I know what it is like when I am kissing my

girlfriend, and I feel my chest against her breasts, but what does it feel like for you with your

girlfriend?"  Defendants' Statement of Undisputed Facts at ¶ 9.  After the meeting, Hansen

completed a campus complaint form ("Hansen Complaint") reporting that Plaintiff had behaved

in an unusual manner and made inappropriate comments.

In a letter dated June 17, 2005, Terry Addison ("Addison"), the Associate Dean of

Student Life, advised Plaintiff that Addison had "received a [c]ampus [c]omplaint and several

4

reports of [Plaintiff] making inappropriate, sexually harassing comments. . . ."  Defendants'

Exhibit H.  Addison requested that Plaintiff contact him to schedule a Dean's Hearing at which

the incidents would be discussed and Addison would determine whether Plaintiff had violated

Offense IV under the Brown Standards of Student Conduct.[2]  By the time Plaintiff received

Addison's letter, however, he had left campus for the summer.  Plaintiff was advised to schedule

the hearing when he returned to Brown in the Fall of 2005.

Plaintiff, however, did not return to Brown until the Fall of 2007.  Within weeks of

Plaintiff's return to campus, new complaints were lodged against him.  A letter from Addison,

dated September 12, 2007, informed Plaintiff that a complaint had been filed against him.[3]

Addison informed Plaintiff that Brown had received a "complaint . . . that alleges you were in

violation of the . . . Code of Student Conduct by allegedly threatening to stab another Brown

student."  Defendants' Exhibit Q at 1.  The letter advised Plaintiff that if the allegation were true,

it would constitute a violation of Offense II.b[4] and Offense IV of the Standards of Student

Conduct.  The letter also advised Plaintiff that the new charges were in addition to the 2005

charge.  Addison informed Plaintiff that Associate Vice President for Campus Life/Dean for

Student Life, Margaret Klawunn ("Klawunn") had determined that an investigation into the 2007

---

[2]Offense IV provides: "Subjecting another person or group to abusive, threatening, intimidating, or harassing actions, including, but not limited to, those based on race, religion, gender, disability, age, economic status, ethnicity, national origin, sexual orientation, gender identity, or gender expression."  Defendants' Statement of Undisputed Facts at ¶ 14.

[3]Plaintiff contends that the letter is inadmissible because it has not been authenticated and because the letter contains hearsay.  Plaintiff's authentication argument is without merit; Addison authenticated the document in his affidavit.  See Defendants' Exhibit G at ¶ 5.  Plaintiff's hearsay argument has no merit; the letter is considered to show notice to Plaintiff, not for the truth of the matters asserted therein.

[4]Offense II.b provides: "[a]ctions that . . . are unreasonably disruptive of the University community and/or its neighborhoods."  Defendants' Exhibit I at 6.

5

complaint would be conducted.  Plaintiff was advised that it was his responsibility to provide the names of any individuals who may have information concerning the complaint; that he had a right to a Brown advisor who was not an attorney; and that he had a right to submit a written statement.  The letter informed Plaintiff that his statement and any other information collected during the investigation would be provided to Klawunn for her use in determining whether there was a reasonable basis to file disciplinary charges against Plaintiff.  The letter also advised Plaintiff that if the matter was referred to a hearing, a hearing officer would determine whether or not Plaintiff had violated the Standards of Student Conduct.

Plaintiff received another letter, also dated September 12, 2007, from Klawunn.  That letter informed Plaintiff:

> In accordance with the Non-Academic Disciplinary Procedures of Brown University and my authority to separate a student from the University on an emergency basis to protect the well-being of students and the University community, this letter is to inform you that effective immediately, September 12, 2007, you are removed and barred from the Brown University campus on an interim basis.

Defendants' Statement of Undisputed Facts at ¶ 26.

On September 12, 2007, Plaintiff met with several Brown administrators who informed him that he would be removed from the campus.  After the meeting, Plaintiff was escorted to his dormitory by Addison to allow Plaintiff to pack his belongings.  Plaintiff and Addison then met Dean J. Allen Ward ("Ward") and Enos, a member of the Brown University Police Department.  Enos drove Plaintiff to the Raddison Hotel in a Brown police cruiser.  Plaintiff remained at the Raddison Hotel until he departed for his home in California on the following day.[5]  Plaintiff

---

[5]At some point around September 12, 2007, prior to being removed from campus, Plaintiff visited the Office of Student Life, reviewed his file, and saw the Hansen complaint.

contends that Brown representatives ordered him into the police vehicle and ordered him not to leave the Raddison until the next day.

Plaintiff's case was handled through Brown's non-academic disciplinary procedures.  The 2005 and the 2007 complaints were combined and scheduled for a hearing.  In a letter dated October 23, 2007, Addison informed Plaintiff that his hearing would be conducted on November 15, 2007.  Dean Richard Bova ("Bova") was selected as Plaintiff's advisor and Dean Phillip Gruppuso ("Gruppuso") was appointed the hearing officer.  Plaintiff was provided with a list of the witnesses who would testify at the hearing and copies of the documentary evidence that would be submitted to the hearing officer.  Plaintiff appeared at the hearing and had an opportunity to present and question witnesses.[6]

After the hearing, Gruppuso issued his decision to Klawunn who then issued the formal decision to Plaintiff.  In a letter dated November 21, 2007, Klawunn informed Plaintiff that Gruppuso had determined that Plaintiff had violated the Standards of Student Conduct Offenses IV and II.b.  The discipline to be imposed was suspension from Brown for three semesters. Plaintiff would be permitted to reapply to Brown, subject to a number of conditions, at the end of the suspension period.  Plaintiff appealed the decision to the Brown Provost, David I. Kertzer ("Kertzer").  Kertzer affirmed the decision in December 2007.  Eventually, Plaintiff returned to Brown and earned his diploma in 2010.

---

[6]Plaintiff, however, chose not to present any witnesses.

IV.  Analysis

A.  42 U.S.C. § 1983

Because 42 U.S.C. § 1983 does not contain a statute of limitations, "courts are required to apply the state statute of limitations which governs the forum state's most analogous cause of action."  Tripp v. DeCarlo, C.A. No. 11-325 S, 2013 WL 836791, at *2 (D.R.I. March 6, 2013) (internal quotation marks and citation omitted).  Section 1983 claims are best characterized as personal injury actions; thus the state statute of limitations for personal injury actions governs the statute of limitations in a § 1983 claim.  Id.  In Rhode Island, the statute of limitations for personal injury actions is three years.  Id.; see also R.I. Gen. Laws § 9-1-14(b) ("[a]ctions for injuries to the person shall be commenced and sued within three (3) years . . .").

The only remaining § 1983 claims are those against Brown and Simmons for the failure to train and/or supervise Enos.  Enos' sole interaction with Plaintiff, and the basis for the substantive claim out of which the failure to train and/or supervise claims arise, occurred on September 12, 2007.  Assuming without deciding that Enos violated Plaintiff's civil rights and acted under color of state law, any lack of supervision or failure to train would have occurred on or before September 12, 2007.  Thus, in order for Plaintiff's § 1983 claims to be timely, the claims had to be filed by September 12, 2010.  The complaint, however, was not filed until October 5, 2010.  Thus, Plaintiff's remaining § 1983 claims are out of time.

B. Civil Conspiracy

To prove a civil conspiracy, Plaintiff must show evidence of an unlawful enterprise. Read & Lundy, Inc. v. Washington Trust Co. of Westerly, 840 A.2d 1099 (R.I. 2004).  Plaintiff

contends that the unlawful enterprise is shown by Klawunn and "various deans" conspiring to "plan the impingement of [Plaintiff's] right to be free in his movements" during a meeting that was held <u>before</u> Plaintiff was removed from campus.  Plaintiff's Objection to Motion for Summary Judgment at 26.

Plaintiff's civil conspiracy claim is also subject to a three-year statute of limitations.  <u>See</u> R.I. Gen. Laws § 9-1-14(b); <u>see</u> <u>generally</u> <u>Grain v. Trinity Health</u>, 431 Fed. App'x 434 (6th Cir. 2011) (civil conspiracy claim is subject to the general state law tort three year statute of limitations).  Viewing the evidence in the light most favorable to Plaintiff, even if the alleged meeting occurred on September 12, 2007, the day Plaintiff was removed from campus, Plaintiff's civil conspiracy claim is time barred.

<u>C.  Breach of the Duty of Confidentiality and Loyalty</u>

Plaintiff argues that Hansen, as a licensed social worker, owed him a duty of confidentiality and loyalty.  Plaintiff alleges that Hansen breached that duty when she disclosed confidential communications in the Hansen complaint.  Plaintiff contends that Hansen's revelation of confidential communications violates the provisions of R.I. Gen. Laws § 5-39.1-1 <u>et</u> <u>seq</u>. and the "common law duty of confidentiality and loyalty. . . ."  Complaint at ¶ 194.

R.I. Gen. Laws § 5-39.1-4(a) provides that a licensed social worker "may [not] disclose any information acquired from clients" except in limited circumstances.  R.I. Gen. Laws § 5-39.1-4(a); <u>see</u> <u>also</u> § 5-39.1-4(a) (1) - (6).  Complaints concerning violations of the statutory scheme must be filed with the Department of Health or the State Board of Social Work Examiners ("Board").  R.I. Gen. Laws § 5-39.1-11.  The Board recommends, to the Director of the Department of Health, sanctions to be imposed for violations.  R.I. Gen. Laws §§ 5-39.1-12,

13.

"[T]he function of prescribing remedies for [statutory] rights is a legislative responsibility [and] not a judicial task." <u>Stebbins v. Wells</u>, 818 A.2d 711, 716 (R.I. 2003) (internal quotation marks and citation omitted).   Where the General Assembly does not include a civil-action enforcement provision within a statutory scheme, there is no private cause of action for damages under the statute. <u>Id.</u>  Here, the General Assembly has prescribed a particular enforcement provision for violations of the statute: any "person convicted of violating the provisions of [§ 5.39.1-1 <u>et seq</u>] . . . is guilty of a misdemeanor, punishable by a fine of not more than one thousand dollars ($1,000)."  R.I. Gen. Laws § 5-39.1-13(e).

In this lawsuit, Plaintiff seeks monetary damages.  The statutory scheme, however, does not provide for a private cause of action for damages.  Thus, Plaintiff does not have a right to file suit for civil damages.  <u>See</u> <u>Stebbins</u>, 818 A.2d at 716 (when "a statute does not plainly provide for a private cause of action [for damages], such a right cannot be inferred") (internal quotation marks and citation omitted).

Plaintiff also contends that Hansen violated the "common law duty of confidentiality and loyalty" owed by a licensed social worker to a client.  Complaint at ¶ 194.  Plaintiff however fails to develop any argument or cite to any authority in support of this claim.[7]  A common law claim of disclosure of client confidences by a licensed social work is a tort that sounds in negligence.  <u>See</u> <u>generally</u> <u>Harley v. Druzba</u>, 169 A.D.2d 1001, 565 N.Y.S.2d 278 (3d Dept. 1991).  Plaintiff's common law claim is thus governed by a three year statute of limitations.  <u>See</u> R.I.

---

[7]It is not clear whether the Rhode Island Supreme Court would recognize a common law claim for disclosure of client confidences by a licensed social worker.  For purposes of this decision, however, the Court assumes without deciding that the Rhode Island Supreme Court would recognize the common law cause of action.

Gen. Laws § 9-1-14(b).

The Hansen complaint was filed in 2005.  At the latest, Plaintiff became aware of the

Hansen complaint just before the time he was removed from campus on September 12, 2007.

Plaintiff's common law claim is out of time.

D.  Inflicton of Emotional Distress

Defendants argue that Plaintiff has failed to show evidence of the required elements of his

emotional distress claims.

1.  Negligent Inflicton of Emotional Distress

Defendants argue that Plaintiff is not in the proper class of plaintiffs who may bring a

negligent infliction of emotional distress claim.  "Only two classes of persons may bring claims

for negligent infliction of emotional distress: those within the 'zone-of-danger' who are

physically endangered by the acts of a negligent defendant, and bystanders related to a victim

whom they witness being injured."  Jalowy v. Friendly Home, Inc., 818 A.2d 698, 710 (R.I.

2003).  Plaintiff fails to point to any evidence demonstrating that he was physically endangered

by any negligent act of the Defendants.  Thus, Plaintiff's negligent infliction of emotional

distress claim fails.  Id.; see also Ward v. Lotuff, C.A. No. 09-357-ML, 2009 WL 3615970

(D.R.I. November 2, 2009) (dismissing negligent infliction claim where plaintiff did not qualify

as either category of plaintiff).

2.  Intentional Inflicton of Emotional Distress

Defendants argue that Plaintiff has failed to point to any conduct that is extreme and

outrageous.  Defendants also argue that Plaintiff has failed to show any measurable physical

symptoms caused by any actions of any of Defendants.

11

In order to prevail on an intentional infliction of emotional distress claim, Plaintiff must prove, among other things, that a defendant's "conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Corvello v. New England Gas. Co., Inc., 460 F. Supp. 2d 314, 326 (D.R.I. 2006) (internal quotation marks and citation omitted). Plaintiff fails to point to any conduct that he alleges was extreme and outrageous.  As a result, Plaintiff's claim cannot survive summary judgment.  See generally Drumm v. CVS Pharmacy, Inc., 701 F. Supp. 2d 200 (D.R.I. 2010) (granting summary judgment on an intentional infliction claim where plaintiff could point to no evidence demonstrating extreme and outrageous behavior).

### E. Breach of Contract

Defendants admit that Brown had a contractual relationship with Plaintiff.  Plaintiff contends that Brown breached its contractual obligation to provide a disciplinary system based on fundamental fairness by failing to provide Plaintiff with (1) notice of "proscribed" conduct, (2) legal counsel, and (3) a copy of Gruppuso's decision.  Plaintiff's Objection to the Motion for Summary Judgment at 32.

"The student-college relationship is essentially contractual in nature."  Havlik v. Johnson & Wales University, 490 F. Supp. 2d 250, 260 (D.R.I. 2007) (internal quotation marks and citation omitted), aff'd, 590 F.3d 25 (1st Cir. 2007).  The terms of the contract may include statements in student handbooks or manuals.  490 F. Supp. at 260.

> The proper standard for interpreting contractual terms between a university and a student is that of reasonable expectation-what meaning the party making the manifestation, the university, should reasonably expect the other party to give it.

> Courts must construe contracts for private education in a manner that leaves the
> [university] administration broad discretion to meet its educational . . .
> responsibilities.  Private schools must have considered latitude to formulate and
> enforce their own rules to accomplish their academic and educational objectives.

Id. at 260-61 (internal quotation marks and citations omitted).

Brown's non-academic disciplinary procedures provide that students charged with

violating the Standards of Student Conduct are "[t]o be informed in writing of the charge(s) and

the alleged misconduct."  Defendants' Exhibit I at 9.  In the June 17, 2005, letter from Addison

to Plaintiff, Addison informed Plaintiff that Brown had received a campus complaint and

"several reports" of Plaintiff "making inappropriate, sexually harassing comments . . . ."

Defendants' Exhibit H.  Plaintiff also received a letter, dated September 12, 2007, informing him

of the 2007 allegation against him that he threatened to stab another student, and, generally,

outlining his rights under the Brown student disciplinary procedures.  Both letters quoted the

specific provision of the Standards of Student Conduct that Plaintiff was accused of violating.

Plaintiff admits that he reviewed the Hansen complaint before he was removed from campus.  In

October 2007, Plaintiff was notified that his disciplinary hearing was scheduled for November

15, 2007.  Plaintiff was provided with a list of witnesses who would testify at the hearing and a

copy of documentary evidence that would be submitted to the hearing officer.  The Court finds

that Brown provided Plaintiff with notice consistent with its policies and fundamental fairness.

Plaintiff also argues that Brown breached its obligation of providing a disciplinary system

based on fundamental fairness by failing to provide Plaintiff with legal counsel.  Plaintiff,

however, fails to point to any provision in the Brown disciplinary procedures where Brown

guarantees a student a right to legal counsel.  Brown's non-academic disciplinary procedures

provide that students charged with offenses under the Standards of Student Conduct have the right to an advisor "who is not an attorney."  Defendants' Exhibit I at 9.  Plaintiff was appointed an advisor.  Plaintiff's claim in this regard is a non-starter.

Finally, Plaintiff also contends that Brown breached its obligation of providing a disciplinary system based on fundamental fairness because Plaintiff did not receive a copy of the Gruppuso decision.  Plaintiff, however, has not properly supported this accusation in his statement of disputed facts.  Plaintiff fails to "identify the evidence establishing the dispute. . . ." D.R.I. LR Cv 56(a)(3).  As a result, the Court need not address Plaintiff's unsupported argument. See Gosselin, 242 F.3d 412 (parties ignore local rules at their own peril).  Notwithstanding Plaintiff's procedural misstep, however, Plaintiff does not point to any provision in the non-academic disciplinary procedures which gives him a right to receive Gruppuso's written decision. It is not the Court's responsibility to "rummage" through the record to identify support for Plaintiff's claim; Plaintiff has an "independent responsibility to do [his] homework." Crellin Technologies, Inc. v. Equipmentlease Corp., 18 F.3d 1, 13 n.17 (1st Cir. 1994).  The procedures provide that the Plaintiff has a right "to have a timely determination of the charges."  Exhibit I at 9.  Klawunn issued the formal decision to Plaintiff in a timely manner.

In sum, the Brown non-academic disciplinary procedures provide for (1) notice to the accused of the charges and alleged misconduct, (2) appointment of an advisor, (3) a hearing, (4) notice of the evidence upon which a charge is based and an opportunity to respond and to present evidence, and (5) a right to appeal the hearing officer's decision.  The record reflects that Brown complied with its non-academic disciplinary procedures and did not breach any of its  contractual obligations to Plaintiff.

14

## F.  Breach of the Covenant of Good Faith and Fair Dealing

"Under Rhode Island law, contracts contain an implied duty of good faith and fair dealing." Havlik, 490 F. Supp. 2d at 261 (internal quotation marks and citation omitted).  In determining whether a party has breached the covenant, the Court must decide "whether or not the actions in question are free from arbitrary or unreasonable conduct." Id. (internal quotation marks and citation omitted).

Brown argues that it should be granted summary judgment on this claim because it met all of its obligations under the student disciplinary procedures and thus did not breach the covenant.  Brown also argues that Plaintiff's claim is based on conclusory allegations.  Plaintiff not only ignores these arguments in his opposition, he does not present any argument on this claim.  The Court finds that Plaintiff has waived this argument and an award of summary judgment in Brown's favor is appropriate on this claim.  Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995) (an issue raised in the complaint but ignored on summary judgment may be deemed waived); Cranberry Commons, Ltd. v. Bimbo Bakeries USA, Inc., Civil Action No. 11-11654-RWZ, 2012 WL 2914403 (D. Mass. July 18, 2012) (on defendant's motion for summary judgment, plaintiff ignored defendant's argument and court granted defendant's motion); In re Citigroup, Inc., MDL No. 1354 (NG), Civil Action No, 00-cv-11912-NG, 2011 WL 1326368 (D. Mass. March 31, 2011) (same); Champlin's Realty Associates v. Carcieri, No. C.A. 06-135, 2006 WL 2927632 (D.R.I. Oct. 12, 2006) (same).

## G. Negligence

Plaintiff has also made a general negligence claim, however, Plaintiff not only fails to respond to Defendants' argument on the negligence claim but again fails to present any argument

on the negligence claim.  The Court therefore considers this claim waived.  See Grenier, 70 F.3d

at 678.

V.  Conclusion

For the reasons stated, Defendants' motion for summary judgment is granted.


SO ORDERED

/s/ Mary M. Lisi
Mary M. Lisi
Chief United States District Judge
May 9, 2013